**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOHN DOE**

     **Plaintiff,**      Case No. 1:20-cv-1002-JG

v

              HON. JAMES S. GWIN

**JANE DOE,**           **ORAL ARGUMENT REQUESTED**

     **Defendant.**

                        /

| | |
|---|---|
| Larry W. Zukerman (0029498) | Jennifer B. Salvatore (P66640) |
| Brian A. Murray (0079741) | SALVATORE PRESCOTT |
| Adam M. Brown (0092209) | PORTER & PORTER, PLLC |
| ZUKERMAN, LEAR | 105 East Main Street |
| & MURRAY CO., L.P.A. | Northville, MI 48167 |
| 3912 Prospect Avenue East | T:(248) 679-8711 |
| Cleveland, OH 44115 | F: (248) 773-7280 |
| T: (216) 696-0900 | *salvatore@sppplaw.com* |
| F: (216) 696-8800 | |
| lwz@zukerman-law.com | |
| bam@zukerman-law.com | *Attorney for Defendant* |
| amb@zukerman-law.com | |
| | |
| *Attorney for Plaintiff* | |

**DEFENDANT'S SPECIAL MOTION TO STRIKE
PLAINTIFF'S COMPLAINT AND FOR ATTORNEY'S FEES PURSUANT TO
CALIFORNIA CIVIL PROCEDURE § 425.16**

Pursuant to Cal. Civ. Proc. Code § 425.16, Defendant moves to strike Plaintiff's Verified

Complaint and requests an award of attorney's fees and costs. California's "anti-SLAPP" statute,

which this Court should apply in this case to the protected speech of the Defendant – a California

citizen—creates a special mechanism to strike retaliatory complaints that target privileged

communications. In this case, the Plaintiff's claims arise entirely out of statements made by

Defendant "in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Cal. Civ. Proc. Code § 425.16(e). Plaintiff will further be unable "to establish a reasonable probability that [he] will prevail on [his] claim[s]," *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013), because of the qualified privilege that protects Defendant's communications under Ohio defamation law, *see Doe v. University of Dayton*, 766 F. App'x 275, 290 (6th Cir. 2019). Plaintiff's complaint is therefore subject to dismissal and Defendant is entitled to an award of attorney's fees pursuant to the statute. Cal. Civ. Proc. Code § 425.16(c)(1).

Defendant further relies on the facts and authority in her supporting memorandum, which accompanies this motion.

Respectfully submitted,
SALVATORE PRESCOTT
PORTER & PORTER, PLLC

Dated: July 14, 2020

/s/ Jennifer B. Salvatore
Jennifer B. Salvatore (P66640)
105 East Main Street
Northville, MI 48167
T:(248) 679-8711
F: (248) 773-7280
salvatore@spplaw.com

*Attorney for Defendant Jane Doe*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**JOHN DOE**

        **Plaintiff,**               Case No. 1:20-cv-1002-JG

v

                                 HON. JAMES S. GWIN

**JANE DOE,**                         **ORAL ARGUMENT REQUESTED**

        **Defendant.**

_____/

| | |
|---|---|
| Larry W. Zukerman (0029498) | Jennifer B. Salvatore (P66640) |
| Brian A. Murray (0079741) | SALVATORE PRESCOTT |
| Adam M. Brown (0092209) | PORTER & PORTER, PLLC |
| ZUKERMAN, LEAR | 105 East Main Street |
| & MURRAY CO., L.P.A. | Northville, MI 48167 |
| 3912 Prospect Avenue East | T:(248) 679-8711 |
| Cleveland, OH 44115 | F: (248) 773-7280 |
| T: (216) 696-0900 | *salvatore@spplaw.com* |
| F: (216) 696-8800 | |
| lwz@zukerman-law.com | |
| bam@zukerman-law.com | *Attorney for Defendant* |
| amb@zukerman-law.com | |

*Attorney for Plaintiff*

**<u>DEFENDANT'S MEMORANDUM IN SUPPORT OF HER SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT AND FOR ATTORNEY'S FEES PURSUANT TO CALIFORNIA CIVIL PROCEDURE § 425.16</u>**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

ARGUMENT ...................................................................................................... 3

1.  The Court should apply California's anti-SLAPP statute to resolve the issue
    presented in this motion ............................................................................. 4

2.  Pursuant to California's anti-SLAPP statute, Plaintiff's complaint must be
    stricken, and attorney's fees awarded ....................................................... 7

    a.  Plaintiff's cause of action arises from Defendant's free speech ......... 8

    b.  Plaintiff cannot establish that he has a reasonable probability of prevailing on
        his claims ...................................................................................... 11

CONCLUSION ................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Areces Coma v. Olivia de Cuebas*, 356 F. Supp. 3d 198 (D.P.R. 2019) ........................... 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 15

*Blackburn v. Brady*, 10 Cal.Rptr.3d 696 (Cal. Ct. App. 2004) ....................................... 11

*Braun v. Chronicle Publishing Co.*, 61 Cal.Rptr.2d 58 (Cal. Ct. App. 1997) ................ 11

*Briggs v. Eden Council for Hope & Opportunity*,
    969 P.2d 564 (Cal. 1999) ...................................................................................... 11

*Costanzo v. Gaul*, 403 N.E.2d 979 (Ohio 1980) ............................................................. 13

*Doe v. College of Wooster*,
    5:16-CV-979, 2018 WL 838630, at *9 (N.D. Ohio Feb. 13, 2018) .................... 16

*Doe v. Univ. of Dayton*, 766 F. App'x 275 (6th Cir. 2019) ...................................... 13-17

*Diamond Ranch Acad., Inc. v. Filer*, 117 F. Supp. 3d 1313 (D. Utah 2015) .................... 8

*Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938) ............................................................... 5

*Estate of Sample through Cornish v. Xenos Christian Fellowship, Inc.*,
    139 N.E.3d 978 (Ohio Ct. App. 2019) ............................................................... 6, 7

*Hakilla v. Consol. Edison Co. of New York, Inc.*,
    745 F. Supp. 988 (S.D.N.Y. 1990) ........................................................................ 5

*Hanly v. Riverside Methodist Hosp.*, 603 N.E.2d 1126 (Ohio Ct. App. 1991) ............... 17

*In re Commercial Money Ctr., Inc., Equip. Lease Litig.*,
    603 F. Supp. 2d 1095 (N.D. Ohio 2009) ............................................................... 6

*Intercon Sols., Inc. v. Basel Action Network*,
    969 F. Supp. 2d 1026 (N.D. Ill. 2013), aff'd, 791 F.3d 729 (7th Cir. 2015) ......... 7

*Kearney v. Foley & Lardner, LLP*, 590 F.3d 638 (9th Cir. 2009) ............................ 11, 12

*Khai v. Cty. of Los Angeles*, No. CV 16-3124 PA (JCX),
    2016 WL 11520701, at *3–4 (C.D. Cal. Aug. 10, 2016) ............................... 13-14

*Kibler v. Northern Inyo County Local Hospital District*,
    138 P.3d 193 (Cal. 2006) ...................................................................................... 11

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ............................................ 5

*Krasnov v. Dinan*, 465 F.2d 1298 (3d Cir. 1972) ............................................................. 5

*Makaeff v. Trump Univ., LLC*, 715 F.3d 254 (9th Cir. 2013) ..................................... 12-14

*Mallon v. Lutz*, 217 F. Supp. 454 (E.D. Mich. 1963) ........................................................ 5

*McCann v. Newman Irrevocable Trust*, 458 F.3d 281 (3d Cir. 2006) .............................. 5

*McCartney v. Oblates of St. Francis de Sales*,
    609 N.E.2d 216 (Ohio Ct. App. 1992) ........................................................... 14-15

*Med. Marijuana, Inc. v. ProjectCBD.com*,
    46 Cal. App. 5th 869, 260 Cal. Rptr. 3d 237 (2020) ............................................. 3

*Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590 (9th Cir. 2010) ................................... 11

*Mississippi Bank of Choctaw Indians v. Holyfield*, 490 U.S. 30 (1989) .......................... 5

*Mitchell v. U.S.*, 88 U.S. 350 (1875) ................................................................................. 5

*Morgan v. Biro Mfg. Co.*, 15 Ohio St. 3d 339, 474 N.E.2d 286 (1984) ........................... 7

*Morrow v. Reminger & Reminger Co., L.P.A.*,
    915 N.E.2d 696 (Ohio Ct. App. 2009) .............................................................. 16

*Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 793 F. App'x 482 (9th Cir. 2019) ....... 13

*Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115 (Cal. 2011) ....................................... 9

*Osundairo v. Geragos*, No. 19-CV-02727,
    2020 WL 1275001, at *10 (N.D. Ill. Mar. 17, 2020) ........................................ 7,8

*Park v. Tsiavos*, 165 F. Supp. 3d 191 (D. N.J. 2016) ...................................................... 5

*Paul v. Friedman*, 117 Cal. Rptr. 2d 82 (Cal. Ct. App. 2002) ....................................... 12

*Peregrine Funding, Inc. v. Sheppard, Mullin, Richter & Hampton LLP*,
    35 Cal.Rptr.3d 31 (Cal. Ct. App. 2005) ............................................................ 12

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
    946 F. Supp. 2d 957 (N.D. Cal. 2013) aff'd, 609 F. App'x 497 (9th Cir. 2015) ... 9

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) ........................................................................... 10

*Riese v. Cty. of Del Norte*, No. 12-CV-03723-WHO,
    2013 WL 4732603, at *5 (N.D. Cal. Sept. 3, 2013) ........................................... 14

*Schaumleffel v. Muskingum U.*,
2:17-CV-463, 2018 WL 1173043, at *7 (S.D. Ohio Mar. 6, 2018)................... 16

*Smith v. Sandusky Newspapers, Inc.*,
3:17CV1135, 2018 WL 3046537, at *5 (N.D. Ohio June 20, 2018) ................. 16

*Smith v. Sandusky Newspapers, Inc.*,
18-3695, 2018 WL 5306979 (6th Cir. Sept. 12, 2018) ........................................ 16

*Steed v. Dep't of Consumer Affairs*, 138 Cal. Rptr. 3d 519 (Cal. Ct. App. 2012) ............ 1

*Underground Sols., Inc. v. Palermo*, 41 F. Supp. 3d 720 (N.D. Ill. 2014) ............... 6, 7, 8

*United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
190 F.3d 963 (9th Cir. 1999) ........................................................................ 5, 14

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ........................................ 9

*Z.F. v. Ripon Unified School Dist.*, 482 F. App'x 239 (9th Cir. 2012)........................... 10

**Statutes**

20 U.S.C. § 1682. 34 C.F.R. Section 106.45(b)................................................................ 10

Cal. Civ. Proc. Code § 425.16  ...............................................................................passim

**Other Authorities**

13E Fed. Prac. & Proc. Juris. § 3619 (3d ed.)................................................................... 5

## INTRODUCTION

Defendant Jane Doe is a 19-year-old sophomore at Oberlin College. In December 2019, she initiated a Title IX investigation with the college based on allegations of sexual misconduct against Plaintiff. Instead of respecting the college's investigative process, Plaintiff immediately lashed out by filing meritless lawsuits against both Oberlin College and the Defendant herself. The suit against Oberlin has already been dismissed. (N.D. Ohio Case No. 1:20-cv-00669-DAP, ECF. 6). The present suit against Defendant should likewise be dismissed as it is wholly premised on conversations Defendant had with a few close friends concerning her Title IX matter, which are conversations deemed protected speech under both California's anti-SLAPP statute and Ohio defamation law.

Defendant is a California citizen. The California Legislature has sought to protect the speech of its citizens. After finding that "it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process," the legislature passed a statute to address Strategic Lawsuits Against Public Participation, or "SLAPP" lawsuits. Cal. Civ. Proc. Code § 425.16 (a). "While SLAPP suits masquerade as ordinary lawsuits such as defamation and interference with prospective economic advantage, they are generally meritless suits brought primarily to chill the exercise of free speech or petition rights by the threat of severe economic sanctions against the defendant, and not to vindicate a legally cognizable right." *Steed v. Dep't of Consumer Affairs*, 138 Cal.Rptr.3d 519, 524 (Cal. Ct. App. 2012) (quotations and citations omitted). California's anti-SLAPP statute provides a special tool to dismiss abusive actions that target important speech early in the process to avoid their chilling effects and to award fees to compensate an individual for having to defend against such an action.

Plaintiff has brought such a lawsuit. Because Plaintiff's case centers on punishing Defendant for speaking about an important issue that was part of an official Title IX proceeding at Oberlin, and where Defendant is a citizen of California, California's anti-SLAPP statute instructs that Plaintiff's complaint be stricken, and attorney's fees be awarded to Defendant for having to defend this action.

## FACTUAL BACKGROUND

In deciding a motion pursuant to California's anti-SLAPP statute, the court "shall consider the pleadings[] and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Civ. Proc. Code § 425.16(b)(2).

Defendant Jane Doe is a 19-year old female college sophomore from California, who has temporarily resided in Ohio to attend Oberlin College. (**Ex. A**, Doe Declaration; Verified Complaint, Doc #: 1-1 PageID #: 7). Defendant moved to Ohio only to attend college and has no intention to stay. When the college closed due to Covid-19, Defendant left Ohio. (Ex. A). Defendant also maintains a California driver's license, and, on summer breaks she returns home to California. (*Id.*). Plaintiff is male and is also an Oberlin College student. He alleges that his domicile is Ohio, (Verified Complaint, Doc #: 1-1 PageID #: 7), although he is also an out-of-state student who is not a citizen of Ohio.

In the fall semester of 2019, Defendant privately confided in a few close friends about two incidents with Plaintiff that led her to file a Title IX complaint with Oberlin for sexual misconduct. (Ex. A.) Plaintiff vaguely pleads that these conversations included statements that Plaintiff had "'raped' and/or 'forced himself on her' 'multiple times.'" (Verified Complaint, Doc #: 1-1 PageID #: 7).

In December 2019, Defendant initiated a Title IX investigation at Oberlin College.  That investigation was to determine whether Plaintiff had violated Oberlin's sexual misconduct policy. (Ex. A.). According to Plaintiff's complaint, during Oberlin's investigation, a third-party witness told an investigator that one of Defendant's friends had told him that Plaintiff had "raped" Defendant. (Verified Complaint, Doc #: 1-1 PageID #: 7–8). According to Plaintiff's complaint, since initiating the Title IX action, Defendant also told "others," including her friend K.B., that Plaintiff "forced himself on her." (Verified Complaint, Doc #: 1-1 PageID #: 8).

In response to Defendant exercising her legal rights by reporting alleged non-consensual sexual conduct by Plaintiff, Plaintiff sued Oberlin College (a case that the court promptly dismissed) and sued Defendant. Plaintiff's legal action against Defendant seeks to chill her First Amendment rights and punish her for accusing him of sexual assault. Plaintiff's complaint was not only brought for an improper purpose, but it lacks legal merit.  He sues Defendant for simply sharing privately with close friends the circumstances that led to her Title IX complaint against Plaintiff. Such an action falls squarely within the type of suit that California's anti-SLAPP statute was meant to address. And it concerns the very type of speech that California's legislature sought to protect for its citizens.

## ARGUMENT

"A SLAPP suit is a meritless lawsuit filed primarily to chill the defendant's exercise of First Amendment rights." *Med. Marijuana, Inc. v. ProjectCBD.com*, 46 Cal. App. 5th 869, 881 (Cal. Ct. App. 2020) (internal quotations and citations omitted). Here, Plaintiff's motivation is to punish and intimidate Defendant for accusing him of sexual misconduct through the Title IX process at Oberlin. He tries to carefully dodge that clearly improper motive by focusing the pleadings on Defendant's conversations with friends immediately prior to and during the Title IX

process. But this, too, is improper, and does nothing to save his complaint from dismissal pursuant to the statute.

1. **The Court should apply California's anti-SLAPP statute to resolve the issue presented in this motion**

This case was removed to federal court based on diversity of the parties. Plaintiff asserts that his domicile is in Ohio. (Verified Complaint, Doc #: 1-1 PageID #: 7). Defendant's domicile is in California. (Ex. A).[1] Defendant is seeking to exercise two aspects of California's anti-SLAPP statute in her motion: the special motion to strike, Cal. Civ. P. Code § 425.16(b), and the availability of fees and costs, Cal. Civ. P. Code § 425.16(c). These provisions in the statute confer substantive rights and therefore should apply in federal court pursuant to *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). *See United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc*., 190 F.3d 963, 973 (9th Cir. 1999).

---

[1] "It is well-established that domicile is not synonymous with residence," and "[t]he fact that a person resides in a particular state is not, by itself, determinative of citizenship for the purpose of federal court jurisdiction." *Hakilla v. Consol. Edison Co. of New York, Inc*., 745 F. Supp. 988, 990 (S.D.N.Y. 1990) (citing *Mississippi Bank of Choctaw Indians v. Holyfield*, 490 U.S. 30 (1989)). "An old domicile continues, despite a change of residence, until there is an intent to create a new home." *Id*. (citing *Mitchell v. U.S*., 88 U.S. 350 (1875)). "Courts have consistently recognized that out-of-state college students are temporary residents and not domiciliaries of the states in which they attend college because residence at college is chosen primarily for the short-term purpose of pursuing an education." *Hakilla*, 745 F. Supp. at 990; *see also Mallon v. Lutz*, 217 F. Supp. 454, 456 (E.D. Mich. 1963); *Areces Coma v. Olivia de Cuebas*, 356 F. Supp. 3d 198, 202 (D.P.R. 2019). *See generally* 13E Fed. Prac. & Proc. Juris. § 3619 (3d ed.) ("Out-of-state students generally have been viewed as temporary residents who are located in the state where their school is located only for the duration and for the purpose of their studies."). In determining domicile, courts consider a number of factors including declarations, house of residence, location of family and the state in which a person holds a driver's license. *Park v. Tsiavos*, 165 F. Supp. 3d 191, 198–99 (D. N.J. 2016) (citing *Krasnov v. Dinan*, 465 F.2d 1298, 1301 (3d Cir. 1972); *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006)). Defendant is a permanent resident of California who moved to Ohio only to attend college with no intention to stay, her parents live in California, and she has a California driver's license. (**Ex. A**). When Oberlin closed due to Covid-19, Defendant left Ohio for Illinois, where her mother was staying. (*Id*.). She then travelled to California, where she is presently staying. (*Id*.).

As the Court is sitting in diversity and this motion raises whether California or Ohio law applies to this issue, the Court looks at Ohio's choice of law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under those choice-of-law rules, this Court is permitted to apply California's anti-SLAPP statute because Ohio law permits dépeçage. Dépeçage is "the use of the law of different states to resolve different issues in the same case." *Estate of Sample through Cornish v. Xenos Christian Fellowship, Inc.*, 139 N.E.3d 978, 985 (Ohio Ct. App. 2019).

In this case, Defendant is bringing this motion pursuant to a special defense under California law and the motion concerns whether Defendant's speech was privileged under the anti-SLAPP statute—a separate issue from whether the speech was defamatory, was privileged under Ohio defamation law, or intentionally inflicted emotional distress. *See Underground Sols., Inc. v. Palermo*, 41 F. Supp. 3d 720, 722–23 (N.D. Ill. 2014) ("In the specific case of an anti-SLAPP statute cited as a defense to a defamation claim, the choice-of-law question regarding the anti-SLAPP law is treated separately from whether a statement is defamatory. This is because the anti-SLAPP question involves whether a statement is privileged, not whether its content is defamatory.") (internal quotations and citations omitted). Ohio courts "may engage in depecage, when appropriate, as part of the choice-of-law analysis." *Estate of Sample through Cornish*, 139 N.E.3d at 986. This is because Ohio has adopted the Restatement (Second) of Conflicts of Law and Section 145, which states that "(1) The rights and liabilities of the parties with respect to an *issue* in tort are determined by the local law of the state which, with respect to that *issue*, has the most significant relationship to the occurrence and the parties under the principles stated in § 6." *See id.* (emphasis added); *See also In re Commercial Money Ctr., Inc., Equip. Lease Litig.*, 603 F. Supp. 2d 1095, 1107 (N.D. Ohio 2009) (noting that Ohio has adopted sections 145, 146 and 6 of the Restatement (Second) of Conflicts of Laws).

5

Ohio's choice of law rules point to the application of California law as California has the most significant relationship to the narrow issue raised in the anti-SLAPP defense. "The Restatement employs the significant-relationship test, which seeks to identify and apply the law of the state that has the most significant relationship with the parties and dispute." *Estate of Sample through Cornish*, 139 N.E.3d at 984. "All of these factors are to be evaluated according to their relative importance to the case." [2] *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984).

Specific to the privilege issue raised in anti-SLAPP, courts find that the two most important factors to consider in determining which state law to apply are the domicile of the speaker and where the speech took place. *See, e.g., Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1035 (N.D. Ill. 2013), *aff'd*, 791 F.3d 729 (7th Cir. 2015). Between those two factors, a speaker's residence is "one of the 'central' factors … because of a state's acute interest in protecting the speech of its own citizens, which counsels in favor of applying the anti-SLAPP statute of a speaker's domicile to his statements." *Palermo*, 41 F. Supp. 3d at 726. In *Palermo*, the court found that the law of the defendant's domicile should apply even when the speech itself took

---

[2] "When confronted with a choice-of-law issue in a tort action under the Restatement of the Law of Conflicts view, analysis must begin with Section 146. Pursuant to this section, a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit. To determine the state with the most significant relationship, a court must then proceed to consider the general principles set forth in Section 145." *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984). Section 145 factors include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. Restatement, Section 145(2). The principles laid out in Section 6 are: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of the other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied. Restatement, Section 6(2).

place elsewhere because of the central importance of one's domicile's interest in protecting its citizens' speech. *Id*.; *see Osundairo v. Geragos*, No. 19-CV-02727, 2020 WL 1275001, at *10 (N.D. Ill. Mar. 17, 2020) (holding that the domicile of the speaker had the greatest interest in the anti-SLAPP issue even though the speech itself took place in another state), **Ex. B**. A court in Utah, which has also adopted Section 145 of the Second Restatement of Conflict of Laws as well as Section 6, similarly found that the domicile of the defendant had the most significant relationship to the anti-SLAPP issue in that case. *See Diamond Ranch Acad., Inc. v. Filer*, 117 F. Supp. 3d 1313, 1317–24 (D. Utah 2015). The court so found because "the purpose behind an anti-SLAPP law is to encourage the exercise of free speech, and California has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens." *Id*. (internal quotations and citations omitted).

These factors weigh in favor of California law applying to this issue. Defendant's domicile is California. California thus "has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens." *Id*. That the speech itself did not take place in California should not tip the scales in favor of Ohio. Like in *Palermo* and *Osundairo*, the domicile's interest in protecting its citizens' speech is central and outweighs any interest of the state where the speech took place. Because Defendant is a California citizen, her rights afforded to her pursuant to that citizenship weigh in favor of applying California's anti-SLAPP statute to this issue.

## 2. Pursuant to California's anti-SLAPP statute, Plaintiff's complaint must be stricken, and attorney's fees awarded

Under California's anti-SLAPP statute, "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there

7

is a probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1). Given the statute's purpose to protect speech, it "should be construed broadly." Cal. Civ. Proc. Code § 425.16(a).

The analysis of an anti-SLAPP motion involves two steps. First, the defendant must make a "threshold showing that the challenged cause of action is one 'arising from' protected activity." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1120 (Cal. 2011) (citing § 425.16, subd. (b)(1)). The burden then shifts to the plaintiff to "demonstrate[] a probability of prevailing on the claim." *Id*. In making its determination, the court "shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Civ. Proc. Code § 425.16(b)(2). A prevailing defendant "shall be entitled to recovery of his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c)(1).

### a.  Plaintiff's cause of action arises from Defendant's free speech

"The first step in analyzing an anti-SLAPP motion is determining whether the defendant successfully made 'an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech.'" *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 967 (N.D. Cal. 2013) *aff'd*, 609 F. App'x 497 (9th Cir. 2015) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003)) (further citations omitted).

An "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) *any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law*; (3) any written or oral statement or

writing made in a place open to the public or a public forum in connection with an issue of public interest, or; (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." Cal. Civ. Proc. Code § 425.16(e) (emphasis added).

Importantly, in making this determination, the Court *must* review not just the factual allegations made in Plaintiff's complaint, but also Defendant's attached affidavit. The statute clearly states that, "[i]n making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." Cal. Civ. Proc. Code § 425.16(b)(2). The "determination" in that section references section (b)(1), which includes both whether the cause of action "aris[es] from" free speech and whether there is a probability that the plaintiff will prevail on the claim.[3]

Here, the factual allegations in the complaint and Defendant's affidavit make clear that Defendant's statements were made in connection with an issue under consideration by an official proceeding authorized by law, namely, a Title IX proceeding. Cal. Civ. Proc. Code § 425.16(e). The United States Department of Education is authorized to issue rules to effectuate Title IX by

---

[3] The Ninth Circuit case law that limits the application of the statute to legal-based challenges to a complaint does not affect this language. The Ninth Circuit is instead concerned about requiring the Plaintiff to present evidence of the factual sufficiency of his claim prior to discovery. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. For Med. Progress*, 890 F.3d 828, 833–34 (9th Cir. 2018) (citing *Z.F. v. Ripon Unified School Dist.*, 482 F. App'x 239, 240 (9th Cir. 2012)) ("Requiring a presentation of evidence without accompanying discovery would improperly transform the motion to strike under the anti-SLAPP law into a motion for summary judgment without providing any of the procedural safeguards that have been firmly established by the Federal Rules of Civil Procedure. That result would effectively allow the state anti-SLAPP rules to usurp the federal rules. We could not properly allow such a result."). There is no such issue here. Instead, the court is reviewing an affidavit here to determine whether a claim falls under certain protected privileges under the statute, which has nothing to do with the factual sufficiency of the underlying claim and thus is not something that would be affected by Rule 56. Therefore, the Court must review the attached affidavit in determining whether the claims are covered by the statute.

statute. *See* 20 U.S.C. § 1682. 34 C.F.R. Section 106.45(b) requires schools governed by Title IX to adopt a grievance process to adjudicate Title IX complaints. Thus, a Title IX proceeding is an official proceeding authorized by law.

California courts have distinguished between "official" proceedings, which are protected, and "ministerial" acts, which are not. *See Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 596 (9th Cir. 2010). The review of a trademark application before the United State Patent and Trademark office is an "official" proceeding as it is governed by statute. *Id*. at 597. A hospital's peer review procedure likewise qualifies as an "official" proceeding as it is required by California's Business and Professions Code. *Kibler v. Northern Inyo County Local Hospital District*, 138 P.3d 193 (Cal. 2006). An investigative audit by a state auditor is also considered an "official" proceeding because it is government-sponsored and provided for by statute. *Braun v. Chronicle Publishing Co*., 61 Cal.Rptr.2d 58 (Cal. Ct. App. 1997). These proceedings stand in contrast to "ministerial" acts, which are business dealings or transactions, such as a sheriff's auction, *Blackburn v. Brady*, 10 Cal.Rptr.3d 696 (Cal. Ct. App. 2004). Given that Title IX proceedings are governed and required by a federal statute, they fall squarely into the "official proceedings" category.

Further, Defendant's statements were made "in connection with" an issue under consideration in an official proceeding because Defendant's communications with her friends were made in the context of Defendant contemplating and pursuing her Title IX complaint with the college. *See* Ex. A. That some of the communications were made prior to the commencement of the Title IX process does not remove them from the ambit of the statute. Indeed, communications made prior to the commencement of an official proceeding and made in anticipation of bringing an action are covered by the statute. *See Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009) (citing *Briggs v. Eden Council for Hope & Opportunity*, 969 P.2d 564 (Cal. 1999)).

10

Likewise, statements made to otherwise unrelated private individuals (such as Defendant's friends) fall under the statute so long as what was communicated to these individuals related to the issues under consideration. *Cf. Paul v. Friedman*, 117 Cal. Rptr. 2d 82, 93 (Cal. Ct. App. 2002) (statements made prior to and during arbitration, including statements to potential clients, were not covered by the statute because the issues raised to these individuals were unrelated to the issues before the arbitrators). Thus, Defendant's statements to her friends concerning the subject of her Title IX complaint—her allegations of sexual misconduct by Plaintiff—were statements made in connection with an issue under consideration in an official proceeding authorized by law.

Third, both of Plaintiff's claims directly arise from Defendant's Title IX-related speech. The "critical point" in this inquiry "'is whether the plaintiff's cause of action was itself based on an act in furtherance of the defendant's right of petition.'" *Kearney*, 590 F.3d at 649 (quoting *Peregrine Funding, Inc. v. Sheppard, Mullin, Richter & Hampton LLP*, 35 Cal.Rptr.3d 31, 38 (Cal. Ct. App. 2005)). Plaintiff's defamation and IIED claims are based on Defendant talking about the subject matter of her Title IX complaint with a few friends—speech that was part and parcel of her exploring and anticipating filing a Title IX complaint with the college. Indeed, several of these friends were with Defendant on the nights in question and/or were identified as witnesses in the Title IX process, thus they had knowledge of issues related to the allegations. Even accepting as true Plaintiff's vague pleadings about what Defendant allegedly said, her statements cannot be separated from and are wholly part of her exercise of speech in anticipation of initiating and during the pendency of her Title IX action.

### b.  Plaintiff cannot establish that he has a reasonable probability of prevailing on his claims

Because Defendant can show that the causes of action arise based on speech protected by the anti-SLAPP statute, the burden shifts to Plaintiff "to establish a reasonable probability that [he]

will prevail on [his] claim in order for that claim to survive dismissal." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013); *see also Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 793 F. App'x 482, 485 (9th Cir. 2019). Under this standard, and because Defendant is challenging the legal sufficiency of the claims, "the claim[s] should be dismissed if the plaintiff presents an insufficient legal basis for [the claims]." *Makaeff*, 715 F.3d at 261.

Here, an affirmative defense—qualified privilege—precludes Plaintiff from establishing a reasonable probability of prevailing. In evaluating this defense, as in the first part of the anti-SLAPP analysis, the Court "shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability *or defense* is based." Cal. Civ. Proc. Code § 425.16 (b)(2) (emphasis added).

### i. Plaintiff cannot establish a reasonable probability of prevailing on his defamation claim because Defendant's statements were privileged

As Plaintiff's Motion to Dismiss, filed concurrently with this motion, makes clear, Plaintiff's claims are legally insufficient for a number of independent reasons.[4] "Under Ohio law, a plaintiff alleging defamation must show: (1) that a false statement of fact was made; (2) that the statement was defamatory; (3) that the statement was published; (4) that the plaintiff suffered injury as a proximate result of the publication; and (5) that the defendant acted with the requisite degree of fault in publishing the statement." *Doe v. Univ. of Dayton*, 766 F. App'x 275, 289 (6th Cir. 2019) (quotations and citations omitted).

Ohio law also recognizes absolute and qualified privileges as defenses to defamation claims. *See Costanzo v. Gaul*, 403 N.E.2d 979, 981 (Ohio 1980). Establishing that the Plaintiff's claim will fail as a matter of law because of qualified privilege means that the Plaintiff has failed

---

[4] Defendant hereby incorporates the arguments set forth in her Motion to Dismiss and Memorandum in Support as if fully set forth herein.

to show with reasonable probability that the claim will succeed on the merits for the purposes of an anti-SLAPP motion. *See U.S. ex rel. Newsham*, 190 F.3d at 971; *Khai v. Cty. of Los Angeles*, No. CV 16-3124 PA (JCX), 2016 WL 11520701, at *3–4 (C.D. Cal. Aug. 10, 2016), **Ex. C**; *Riese v. Cty. of Del Norte*, No. 12-CV-03723-WHO, 2013 WL 4732603, at *5 (N.D. Cal. Sept. 3, 2013), **Ex. D**; *see also Makaeff*, 715 F.3d at 264 ("If [Defendant]'s statements lie within California's statutory litigation privilege, then [Plaintiff] has no probability of success on the merits and [Defendant]'s special motion to strike should have been granted.").

Under Ohio law and as set forth more fully in Defendant's motion to dismiss, there is qualified privilege to speech if the targeted communications are 1) reasonably related to disciplinary proceedings; and 2) "the relationship of the parties to the communication is 'such as to afford a reasonable ground for supposing an innocent motive for giving information and to deprive the act of an appearance of officious intermeddling in the affairs of others.'" *Univ. of Dayton*, 766 F. App'x at 290 (quoting *McCartney v. Oblates of St. Francis de Sales*, 609 N.E.2d 216, 224 (Ohio Ct. App. 1992)).

The *University of Dayton* case is squarely on point and illustrates why qualified privilege applies here. In *University of Dayton*, the plaintiff sued his university and the young woman who initiated a Title IX investigation against him. As in this case, he sued for defamation and intentional infliction of emotional distress based upon private statements made by the Defendant to her friends about a sexual assault that was the subject of her Title IX investigation. The court recounted that the defendant described the incident (albeit incorrectly, according to the plaintiff's complaint) to a small number of friends and roommates "who shared an interest in her health and well-being." *Univ. of Dayton*, 766 F. App'x at 290. After first stating that "[p]rivate statements to friends are not the type of utterances commonly thought of as giving rise to defamation claims," the Sixth

Circuit found that qualified immunity applied given that the statements recounting what happened to the Defendant were reasonably related to the Title IX disciplinary proceedings and given the context in which these statements were made and to whom they were made. *Id*.

The facts in this case are strikingly similar. As both Plaintiff's complaint and Defendant's affidavit state, Defendant spoke privately with a few friends about what happened between her and Plaintiff as it related to her Title IX complaint. As discussed in the prior section, these conversations directly related to and concerned the subject of the Defendant's Title IX investigation at Oberlin College. Further, the relationship between Defendant and her friends, like in *University of Dayton*¸ "afford a reasonable ground for supposing an innocent motive for giving information." *Id*. Nothing that was pled in Plaintiff's complaint, nor stated in Defendant's affidavit, suggests anything other than Defendant sharing this information privately with friends. Qualified privilege thus applies to this case.

Because qualified privilege applies, Plaintiff can only overcome that privilege by properly alleging that the statements were made with actual malice. *Id*. (citing *McCartney*, 609 N.E.2d at 223). The court in *University of Dayton* found that the plaintiff had not properly pled malice. It made this finding based on the plaintiff's formulaic pleadings that "[Defendant] made her false and non-privileged statements negligently, with knowledge of their falsity, or with reckless disregard for their truth or falsity," which the court found was a legal conclusion that did not need to be accepted as true in a motion to dismiss posture. *Univ. of Dayton*, 766 F. App'x at 290. Plaintiff made similar boilerplate legal pleadings here.[5] Plaintiff needed to plead *facts* that support his argument that the statements were defamation *per se* or that Defendant acted with actual malice,

---

[5] That Plaintiff also pleads that the statements were defamation *per se* does not save him. This is also a legal conclusion that the court does not need to accept as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

and he does not.  For this and for other reasons more fully described in Defendant's Motion to

Dismiss, Plaintiff's defamation claim is legally deficient and not likely to succeed on the merits.

Because Plaintiff's defamation claim fails, so, too, does his IIED claim. *See Smith v.*

*Sandusky Newspapers, Inc*., 3:17CV1135, 2018 WL 3046537, at *5 (N.D. Ohio June 20, 2018),

appeal dismissed, 18-3695, 2018 WL 5306979 (6th Cir. Sept. 12, 2018) ("When a plaintiff bases

a claim for intentional infliction of emotional distress on allegedly defamatory statements,

dismissal of the defamation claim requires the dismissal of the emotional distress claim."), **Ex. E**.

The same immunities apply to an IIED claim as to a defamation claim brought on the same facts.

*See Doe v. College of Wooster*, 5:16-CV-979, 2018 WL 838630, at *9 (N.D. Ohio Feb. 13, 2018),

**Ex. F**; *see also Schaumleffel v. Muskingum U*., 2:17-CV-463, 2018 WL 1173043, at *7 (S.D. Ohio

Mar. 6, 2018) (applying same result of immunity analysis as was reached on defamation claim

flowing from same facts), **Ex. G**.

Even taking the Plaintiff's intentional infliction of emotional distress claim on the merits,

it fails. Under Ohio law,

> It has not been enough that the defendant has acted with an intent which is tortious
> or even criminal, or that he has intended to inflict emotional distress, or even that
> his conduct has been characterized by 'malice,' or a degree of aggravation which
> would entitle the plaintiff to punitive damages for another tort. Liability has been
> found only where the conduct has been so outrageous in character, and so extreme
> in degree, as to go beyond all possible bounds of decency, and to be regarded as
> atrocious, and utterly intolerable in a civilized community. Generally, the case is
> one in which the recitation of the facts to an average member of the community
> would arouse his resentment against the actor, and lead him to exclaim,
> "Outrageous!"

*Morrow v. Reminger & Reminger Co., L.P.A*., 915 N.E.2d 696, 713–14 (Ohio Ct. App. 2009)

(citation omitted). Like the court found in *University of Dayton*, a college student who privately

discusses allegations of sexual misconduct with a few close friends in connection with a Title IX

proceeding flowing from the same incident falls far short of meeting the very high bar Ohio has

set for conduct giving rise to liability for intentional infliction of emotional distress. *See Univ. of Dayton*, 766 F. App'x at 291; *see also Hanly v. Riverside Methodist Hosp.*, 603 N.E.2d 1126, 1132 (Ohio Ct. App. 1991) (publishing that the plaintiff was discharged for sexual harassment, even if it exceeded the bounds of qualified privilege, "was not so extreme and outrageous to support a claim for intentional infliction of emotional distress"). Plaintiff's IIED claim therefore also fails as a matter of law.

## CONCLUSION

Plaintiff's abuse of process to try to chill Defendant's speech and harm her for participating in the Title IX process is the very type of lawsuit that the California Legislature sought to curtail in passing its anti-SLAPP statute. Plaintiff should not be permitted to continue to use this court's time and resources to intimidate and harass Defendant through this frivolous lawsuit. Defendant asks that the Court strike Plaintiff's complaint in its entirety, and, pursuant to Cal. Civ. Proc. Code § 425.16(c)(1), award the Defendant her attorney's fees and costs incurred to-date to defend this action.

<div style="margin-left: 50%;">

Respectfully submitted,
SALVATORE PRESCOTT
PORTER & PORTER, PLLC

</div>

Dated: July 14, 2020

<div style="margin-left: 50%;">

/s/ Jennifer B. Salvatore
Jennifer B. Salvatore (P66640)
105 East Main Street
Northville, MI 48167
salvatore@sppplaw.com
*Attorney for Defendant Jane Doe*

</div>

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 14, 2020 the foregoing document, Defendant's Special Motion To Strike Plaintiff's Complaint And For Attorney's Fees Pursuant To California Civil Procedure § 425.16, and this <u>Proof of Service</u> were served upon all counsel of record via the Court's ECF system which will electronically serve all counsel of record at their respective email addresses as captioned on the pleadings of record.

Dated: July 14, 2020                              */s/ Jennifer Salvatore*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**JOHN DOE**

                     **Plaintiff,**               Case No. 1:20-cv-1002-JG

v

                                      HON. JAMES S. GWIN

**JANE DOE,**

                     **Defendant.**

                                                   /

| | |
|---|---|
| Larry W. Zukerman (0029498) | Jennifer B. Salvatore (P66640) |
| Brian A. Murray (0079741) | SALVATORE PRESCOTT |
| Adam M. Brown (0092209) | PORTER & PORTER, PLLC |
| ZUKERMAN, LEAR | 105 East Main Street |
| & MURRAY CO., L.P.A. | Northville, MI 48167 |
| 3912 Prospect Avenue East | T:(248) 679-8711 |
| Cleveland, OH 44115 | F: (248) 773-7280 |
| T: (216) 696-0900 | *salvatore@sppplaw.com* |
| F: (216) 696-8800 | |
| lwz@zukerman-law.com | |
| bam@zukerman-law.com | *Attorney for Defendant* |
| amb@zukerman-law.com | |
| | |
| *Attorney for Plaintiff* | |

## DEFENDANT'S 7.1(F) CERTIFICATE OF COMPLIANCE

The above-captioned matter has not yet been assigned to a track. Pursuant to L.R. 7.1(f), Defendant, by and through her counsel, certifies that the Defendant's Motion To Strike Plaintiff's Complaint And For Attorney's Fees Pursuant To California Civil Procedure § 425.16 and Memorandum in Support complies with the page limit requirement as defined by LCivR 7.1(f) for cases assigned to the standard track.

Respectfully submitted,
SALVATORE PRESCOTT
PORTER & PORTER, PLLC

Dated: July 14, 2020

/s/ Jennifer B. Salvatore
Jennifer B. Salvatore (P66640)
105 East Main Street
Northville, MI 48167
T:(248) 679-8711
F: (248) 773-7280
salvatore@sppplaw.com
*Attorney for Defendant Jane Doe*

2